FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAVONNA LATELY,

       Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant - Appellee.

No. 13-1131
(D.C. No. 1:12-CV-00509-CMA)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

Shavonna Lately appeals a district court order affirming the Commissioner's

denial of disability and supplemental security income benefits. Ms. Lately applied

for benefits claiming she became disabled on December 23, 2008 from an inner-ear

disorder. After a hearing, an administrative law judge (ALJ) determined at step four

of the five-step sequential evaluation process, *see Wall v. Astrue*, 561 F.3d 1048,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1052 (10th Cir. 2009) (explaining the five-step process), that Ms. Lately was not disabled because although she suffered from vestibular disorder, depression, and panic disorder, she retained the residual functional capacity (RFC) to perform a restricted range of light work, including her past jobs as an office helper and small parts assembler. After the ALJ denied her claim, Ms. Lately submitted additional medical records, but the Appeals Council denied review and the district court affirmed the Commissioner's denial of benefits. Ms. Lately now appeals.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). On appeal, Ms. Lately advances six arguments, none of which has any merit.

First, Ms. Lately says the ALJ erred in concluding that she did not satisfy listing 2.07, which concerns the "[d]isturbance of labyrinthine-vestibular function (including Meniere's disease)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07 (italics omitted).[1] According to Ms. Lately, there was evidence showing that she met the listing's criteria, including reports that she experienced dizziness; a January 2008 electronystagmogram (ENG) report reflecting "hearing loss, tinnitus, and a pressure

---

[1]    Listing 2.07 requires "a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing" with "[d]isturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and [h]earing loss established by audiometry."

feeling in her right ear"; and a March 2011 report indicating "decreased hearing and tinnitus." Aplt. Br. at 18 (internal quotation marks omitted). But much of the evidence she relies upon, including the March 2011 report, was not considered and is irrelevant because it post-dates the ALJ's August 23, 2010 decision. *See* 20 C.F.R. §§ 404.970(b); 416.1470(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] hearing decision.").

Of the evidence that was considered, there is no dispute that Ms. Lately suffered from vestibular disorder. But as the ALJ recognized, the evidence failed to establish the severity of her vertigo, despite Ms. Lately's fairly regular reports of dizziness. Moreover, the ALJ found no reports of tinnitus, and although Ms. Lately described ringing or humming in her right ear, she also reported "no history of syncope or ringing in the ears," R., Vol. 1 at 411. We have no authority to reweigh this evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Finally, Ms. Lately cites the 2008 ENG report as evidence of "hearing loss, tinnitus, and a pressure feeling in her right ear," Aplt. App. at 236, but this was simply her own description of her symptoms, which is insufficient to show that she satisfied the listing, *see* 20 C.F.R. §§ 404.1529(d)(3); 416.929(d)(3) (stating that claimant's allegations of symptoms will not be substituted "for a missing or deficient sign or laboratory finding to raise the severity of impairment(s) to that of a listed impairment").

- 3 -

Ms. Lately's second contention is that the ALJ incorrectly evaluated the opinion of her treating physician, Dr. Robert Magnuson. Dr. Magnuson checked a box on a functional assessment form indicating that Ms. Lately could not work because of her vertigo. The ALJ refused to credit Dr. Magnuson's opinion in part because it was inconsistent with his own treatment notes. Ms. Lately argues that the ALJ should have accepted Dr. Magnuson's opinion that she was disabled because it was consistent with a similar opinion of an examining physician, Dr. Leonidas Rojas.

Ms. Lately is correct that a treating physician's opinion is generally entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). But as she also recognizes, Dr. Magnuson's opinion addressed the question of disability, which is an issue reserved to the Commissioner. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (1994). Thus, Dr. Magnuson's opinion was not entitled to controlling weight because the issue of disability is not a medical opinion subject to controlling weight, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Moreover, the ALJ rejected this aspect of the opinion because, as Ms. Lately acknowledges, it was inconsistent with Dr. Magnuson's own treatment notes, which reflected conservative treatment with physical therapy and medication. *See* 20 C.F.R. §§ 404.1527(c)(4);

- 4 -

416.927(c)(4) (stating that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (internal quotation marks omitted)). Again, we have no authority to reweigh this evidence. *See Lax*, 489 F.3d at 1084.

In her third argument, Ms. Lately insists the ALJ erred by both failing to explicitly discuss Dr. Rojas's opinion that she was unlikely capable of working due to her vertigo and failing to expressly state what weight she assigned to this opinion. This argument fails. While it is true that when an ALJ fails to explain the reasons for not crediting a medical source opinion we "cannot meaningfully review the ALJ's determination," *Watkins*, 350 F.3d at 1301, it is also true that the error here was harmless because we can tell from the ALJ's rejection of Dr. Magnuson's nearly identical opinion that the ALJ gave no weight to Dr. Rojas's opinion. We can further tell that the reason she gave Dr. Rojas's opinion no weight is because, like Dr. Magnuson's, it addresses the issue of disability, which is reserved to the Commissioner, and it is inconsistent with Dr. Magnuson's treatment notes.

Ms. Lately's fourth argument is that the ALJ failed to adequately develop the record.[2] Citing portions of the record, much of which post-dates the ALJ's decision,

---

[2] Ms. Lately labels her argument as challenging the ALJ's RFC assessment, but the substance of her brief asserts the ALJ failed to develop the record by not eliciting additional testimony from her. *See* Aplt. Br. at 20 ("the ALJ failed to satisfy her duty to ask the claimant questions to ascertain the nature of the claimant's alleged

(continued)

- 5 -

Ms. Lately contends the ALJ should have asked her more questions that might have led to greater support for her claims that she was restricted by her symptoms.  But contrary to Ms. Lately's assertions, the ALJ's decision demonstrates that the record was adequately developed.  Although Ms. Lately claims the ALJ should have credited her testimony regarding the limiting effects of her symptoms over evidence in the record, the ALJ "clearly and affirmatively linked [her] adverse determination of [Ms. Lately's] credibility to substantial record evidence . . . and our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency," *Wall*, 561 F.3d at 1070 (brackets and internal quotation marks omitted).  Indeed, the ALJ cited and discussed inconsistencies between Ms. Lately's testimony and her activities of daily living, child-care responsibilities, diagnostic exams, treatment-seeking behavior, medications, her failure to fully participate in physical and occupational therapy, her consistent work history, and her collection of unemployment benefits, which required her to attest that she was ready, willing, and able to work.  The ALJ's discussion of this evidence demonstrates that the record was adequately developed and that the ALJ clearly explained why she declined to fully credit Ms. Lately's testimony.  Our precedents do not require more.  *See id.*

---

impairments and their impact" (internal quotation marks and parentheses omitted)); *id.* ("Another failure to develop the record surrounds Lately's receipt of unemployment benefits . . . ."); *id.* at 21 ("Another failure to develop the record is the ALJ's failure to ask the claimant . . . .").

In her fifth argument, Ms. Lately faults the ALJ for concluding that she was not disabled because she could still perform her past relevant work as a general office helper or small parts assembler. According to Ms. Lately, the job description for an office helper in the Dictionary of Occupational Titles (DOT) requires delivering office supplies, which would exacerbate her dizziness. Similarly, the DOT's job description for a small parts assembler includes work that entails moving machinery, which also allegedly exceeds her restrictions. But the ALJ asked the vocational expert (VE) whether Ms. Lately could perform her past relevant work with her restrictions, and the VE indicated that she could. Moreover, the VE specifically stated that these jobs comported with the descriptions contained in the DOT. Consequently, there is substantial evidence supporting the ALJ's decision. Ms. Lately's claim that moving would exacerbate her dizziness simply invites us to substitute our judgment for the ALJ's conclusion that Ms. Lately could stand or walk for up to six hours in an eight-hour workday with normal breaks. But once again, we have no authority to do so. *See id.*

Finally, Ms. Lately contends the ALJ should have proceeded to step five of the sequential evaluation process to determine whether she could perform other work in the national economy. But the ALJ didn't—and didn't need to—reach step five because she determined at step four that Ms. Lately was not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the

next step."); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that claimant is or is not disabled, evaluation under a subsequent step is not necessary.").

For these reasons, the judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge