FILED
United States Court of Appeals
Tenth Circuit

June 18, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ULYSSES BARNES,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant - Appellee.

No. 14-1341
(D.C. No. 1:13-CV-01427-WJM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

---

Ulysses Barnes appeals from a district court order that affirmed the

Commissioner's denial of his applications for disability insurance benefits (DIB) and

supplemental security income (SSI). We have jurisdiction under 42 U.S.C. § 405(g)

and 28 U.S.C. § 1291, and we reverse and remand.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Mr. Barnes is an Air Force veteran. He has a master's degree in human resources and has worked as a user support analyst. The Dictionary of Occupational Titles (DOT) states that a user support analyst "[r]eceives telephone calls from users having problems [with] computer software and hardware or inquiring how to use specific software." U.S. Dep't of Labor, Dictionary of Occupational Titles, 032.262-010 (4th ed., rev. 1991).

In 2009, Mr. Barnes pleaded guilty to a fourth-degree felony. He lost his job and applied for DIB and SSI, alleging he was disabled due to back, knee, and hip problems as of July 2009, when he was fifty-six years old.

Mr. Barnes appeared before an administrative law judge (ALJ) and testified he also suffers from depression caused by being homeless and unemployed. He described his former job as "technical customer service" involving "trouble shooting" customers' telephone complaints. Aplt. App. 1, Vol. 1 at 69-70.

Mr. Barnes further testified he had difficulties "interacting with people" and "trying to deal with the attitudes and personalities." *Id.* at 75. "[I]f [someone] came at [him] with a negative attitude, [he] didn't have a positive reaction," *id.*, and "[he] felt like they were trying to attack [him]," *id.* at 76.

A psychologist also testified at the hearing, characterizing Mr. Barnes's depression as either "an adjustment disorder with depressed moods" or "a major depressive disorder." *Id.* at 57. He further testified that Mr. Barnes has "an anxiety

related disorder." *Id.* Based on those conditions, the psychologist opined that Mr. Barnes was moderately limited in social functioning and in interacting with supervisors, coworkers, and the public.

A vocational expert (VE) testified at the hearing that Mr. Barnes's former employment was a sedentary and skilled job with a specific vocational preparation (SVP) rating of seven. The ALJ questioned the VE whether Mr. Barnes's job could be performed by a hypothetical claimant whose residual functional capacity (RFC) limited contact with others. Specifically, the ALJ described the hypothetical claimant as being able to "interact with supervisors and relate to coworkers if not frequent or prolonged and with less public contact, and that would be in person." *Id.* at 84. The ALJ clarified that "less public contact in person" meant "[b]etween . . . occasional up to frequent but not frequent." *Id.* at 85. The VE responded that such a claimant could work as a user support analyst. When questioned by Mr. Barnes's attorney, the VE testified that if the hypothetical limitation on public contact included telephonic contact, the claimant could not perform the job.

Following the hearing, the ALJ concluded, based on the VE's testimony, that Mr. Barnes could perform his past relevant work, and therefore, was not disabled:

> [Mr. Barnes] has past relevant work as a user support analyst (DOT #032.262-010, SVP 7, sedentary exertion). The [VE] testified that with the [RFC] set forth an individual could perform the requirements of [Mr. Barnes's] past relevant work. The undersigned accepts that testimony and concludes [Mr. Barnes] can perform past relevant work.

Aplt. App. 1, Vol. 1 at 39.  The Appeals Council upheld the ALJ's decision[1] and the district court affirmed.

## DISCUSSION

### I.  Standards of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### II.  Step Four

At step four of the familiar five-step sequential disability analysis, a claimant's RFC is measured against "the physical and mental demands of the claimant's past relevant work" to determine whether the claimant can resume such work.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases:  (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the

---

[1]     Mr. Barnes has apparently succeeded on a different application for benefits, and was found by the Acting Commissioner to be disabled as of September 2011. *See* Aplt. Br. at 3 n.2.  The instant case involves an alleged disability onset date of July 2009.

- 4 -

job demands found in phase two despite the [RFC] found in phase one." (citations omitted)).

Mr. Barnes argues that the ALJ failed to make necessary findings regarding the demands of his job as a user support analyst. We agree.[2]

At each phase of the step-four analysis, "the ALJ must make specific findings." *Id.* "To make the necessary findings, the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations." *Id.* at 1024 (internal quotation marks omitted).

Nowhere in the ALJ's decision is there mention of any demands of Mr. Barnes's past job, either as he performed it or as it is customarily performed in the national economy. Particularly troubling is the omission of the job's telephonic-contact component. Mr. Barnes described his former job as being telephonic customer service, and the DOT confirms that description.

This job requirement implicates Mr. Barnes's ability to interact with the public, which the ALJ factored into Mr. Barnes's RFC as a limitation. Yet, without explanation, the ALJ circumscribed the public-contact limitation to in-person

---

[2] The Acting Commissioner contends that Mr. Barnes is arguing for the first time on appeal "that the hypothetical to the [VE] was somehow flawed because it specified less public contact in person versus by public telephone." Aplee. Br. at 46 n.12. We do not read Mr. Barnes's argument in the same light. Mr. Barnes contends in his opening appellate brief that "the ALJ did not make specific findings at the second phase [of step four] regarding the physical and mental demands of [his] past relevant work." Aplt. Br. at 35. Mr. Barnes advanced the very same contention below. *See* Aplt. App. 2 at 509. It is therefore properly before us on appeal.

contacts. We are left to speculate whether the ALJ intended no limitation on the ability to interact with the public by telephone or whether the ALJ simply overlooked a key demand of Mr. Barnes's job. The former possibility—intending no limitation on telephonic contact—strikes us as inconsistent with the ostensibly moderate (and rather amorphous) limitation the ALJ imposed on Mr. Barnes's in-person public contacts: something "[b]etween . . . occasional up to frequent but not frequent," Aplt. App. 1, Vol. 1 at 85. The latter possibility—overlooking a key job demand—is suggested by the ALJ's confusion during the hearing when he asked Mr. Barnes whether his work was a "day labor job" and whether his employer gave him his "own truck." *Id.* at 69, 71.

This case presents a prototypical example of the practice we discouraged in *Winfrey*, where "the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head," leaving us "nothing to review." 92 F.3d at 1025. The Acting Commissioner suggests that the ALJ's decision comports with *Winfrey* because, in addition to "incorporat[ing] the [VE's] testimony," the ALJ mentioned the DOT code number for a user support analyst. Aplee. Br. at 48. Granted, an ALJ may satisfy his step-four responsibilities by "quot[ing] the VE's testimony approvingly[ ] in support of his own findings at phases two and three of the analysis," *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003), and by consulting the DOT, *see* 20 C.F.R. § 404.1560(b) (approving

consultation of the DOT "to help . . . determine whether [the claimant] can do . . . past relevant work, given [his] [RFC]"); *id.* § 416.960(b) (same).

But "[t]he ALJ's phase-two task is case-dependent." *Wells v. Colvin*, 727 F.3d 1061, 1075 (10th Cir. 2013). Here, the ALJ did not quote the VE's testimony about the job demands of a user support analyst. Rather, the ALJ simply stated that the VE had testified Mr. Barnes "could perform the requirements of [his] past relevant work." Aplt. App. 1, Vol. 1 at 39. Moreover, the DOT clearly identifies telephonic contact with the public as an integral job demand, and the VE never testified that Mr. Barnes could meet that job demand with the RFC set by the ALJ. Indeed, the VE testified that Mr. Barnes could *not* perform his past work if the hypothetical RFC "include[d] telephone contact." *Id.* at 85.

We conclude the ALJ committed *Winfrey* error by failing to make findings regarding the demands of Mr. Barnes's former job. Further, "[h]aving failed to complete phase two appropriately, the ALJ was unable to make the necessary findings at phase three about [Mr. Barnes's] ability to meet the mental demands of his past relevant work despite his mental impairments." *Winfrey*, 92 F.3d at 1024-25. Consequently, the case must be remanded for further proceedings.

**CONCLUSION**

We reverse the judgment of the district court and remand this case with instructions that it be sent back to the agency for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge