FILED
United States Court of Appeals
Tenth Circuit

December 11, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARCOS A. VIGIL,

　　Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

　　Defendant - Appellee.

No. 17-1462
(D.C. No. 1:15-CV-02659-RM)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, **O'BRIEN**, and **CARSON**, Circuit Judges.
_____

Marcos A. Vigil appeals a district court order affirming the Commissioner's denial of disability and supplemental security income benefits. Proceeding pro se, he repeats—verbatim—the same arguments raised by his attorney in the district court, claiming an administrative law judge (ALJ) erred at steps 3, 4, and 5 of the disability evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the process). For the reasons that follow, we affirm.

---

　* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Mr. Vigil claimed he was disabled on January 1, 2006, by back problems and schizophrenia. After an initial hearing, the ALJ denied benefits, but the district court remanded for further administrative proceedings. On remand, the ALJ held a second hearing and determined anew that Mr. Vigil was not disabled. The ALJ found that Mr. Vigil was severely impaired by personality disorder, schizophrenia, and alcohol abuse, but there was no evidence to "substantiate a finding of any severe impairment, other than alcohol abuse." R., Vol. 2 at 317.[1] The ALJ concluded that Mr. Vigil did not satisfy the criteria for any listed impairment, he could perform his past relevant work as a prep cook and mail clerk, and he could transition to other jobs as a small product assembler and floor wax technician. In reaching these conclusions, the ALJ found that Mr. Vigil had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels," except that his non-exertional limitations required unskilled work that did not include dealing with the general public or more than occasionally dealing with co-workers. *Id.* at 319. Mr. Vigil did not seek review by the Appeals Council, and the district court affirmed.

II

"In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency. Rather, we examine the record as a

---

[1] Mr. Vigil does not contest this step-two finding, and any error would be harmless in any event, given that the ALJ unequivocally found at least one severe impairment. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

whole to ascertain whether the ALJ's decision . . . is supported by substantial evidence and adheres to the correct legal standards." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation and internal quotation marks omitted).

On appeal, Mr. Vigil contests only the ALJ's evaluation of his non-exertional impairments. Although his arguments were apparently crafted by his attorney in the district court, *compare* R., Vol. 1 at 29-44 *with* Aplt. Br. at 7-25, they are unfocused and poorly developed. "We will consider and discuss only those of [his] contentions that have been adequately briefed for our review." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). As we understand Mr. Vigil's brief, he contends the ALJ erred at step three by finding that he did not meet the criteria for a listed impairment; at step four by formulating an RFC that did not account for all of his impairments and his doctors' opinions; and at step five by posing a hypothetical question to the vocational expert (VE) that did not accurately reflect his impairments. We evaluate these arguments in turn.

## A. Step Three: Listings

"At step three, the [ALJ must determine] whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (brackets and internal quotation marks omitted). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id.* (internal quotation marks omitted). But to be disabled under

3

a listed impairment, a claimant must present evidence demonstrating that he satisfies all the criteria for the relevant listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Mr. Vigil fails to demonstrate that he satisfies all the criteria of any listed impairment. His only specific argument relates to the ALJ's conclusion that he did not satisfy listing 12.03, in particular, that listing's paragraph C criteria.

Listing 12.03 concerns "Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03. To satisfy the paragraph C criteria, a claimant must show a:

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

Mr. Vigil correctly points out that the ALJ erred by summarily concluding, without explanation, that he failed to satisfy these criteria, but he does not explain how this error was anything but harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d

4

729, 733-34 (10th Cir. 2005) (applying harmless error analysis "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)). He alludes to subparagraph 3, arguing that he "has a history of one or more years of inability to function outside a highly supportive living arrangement[,] [h]e isolates in an apartment, situated close to his parents, his meals are provided at least in part by his mother[,] and he is monitored by his father's nearly daily visits." Aplt. Br. at 13 (internal quotation marks omitted). While the record clearly confirms that he suffers from schizophrenic conditions and alcoholism, there is substantial evidence that he does not have a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03(C)(3). The ALJ cited evidence that Mr. Vigil lived alone, albeit close to his parents, and could dress and bathe himself, do laundry, cook simple meals, and go to the grocery store with his mother. The ALJ also cited evidence that although he did not socialize with others, he spent time with his family and attended church services. This evidence was consistent with the opinion of Dr. MaryAnn Wharry, an agency physician, who determined that Mr. Vigil did not satisfy the paragraph C criteria. Under these circumstances, we are confident that no reasonable factfinder would have concluded otherwise.

5

*B. Step Four: RFC and Medical Source Opinions*

Mr. Vigil next contends that the ALJ erred at step four by assessing an RFC that failed to account for all of his impairments and his doctors' opinions. On this score, he first contends the RFC is flawed because the ALJ failed to weigh the opinion of Dr. Brett Valette, an examining physician who believed Mr. Vigil had "schizoid personality disorder" and "chronic alcohol dependency." R., Vol. 2 at 246. These diagnoses are consistent with the RFC, however, and the ALJ favorably cited Dr. Valette's opinion in evaluating Mr. Vigil's daily activities. Thus, any oversight in failing to specify the weight given to Dr. Valette's opinion was harmless. *See Keyes-Zachary*, 695 F.3d at 1165 (holding that any error from ALJ's failure to specify the weight given to an examining physician's opinion was harmless where the opinion was not inconsistent with the limitations assessed in the RFC); *see also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Mr. Vigil also suggests the ALJ ignored the opinion of Dr. Steven Stockdale, a clinical psychologist who evaluated Mr. Vigil in December 2005. Dr. Stockdale diagnosed Mr. Vigil with severe and chronic alcohol dependence, secondary to a severe and recurrent depressive disorder with suicidal thoughts, schizoaffective disorder, and mixed personality disorder with psychotic thinking and schizoid and schizotypal personality characteristics. Dr. Stockdale concluded that Mr. Vigil was "gravely disabled," R., Vol. 2 at 211, and, after a brief period of counselling, had him

6

hospitalized for six days in 2006. Thereafter, Dr. Stockdale referred Mr. Vigil to

Dr. James Spadoni for treatment and did not see Mr. Vigil again until April 2012,

when he noted Mr. Vigil was living on his own and "only had 2 to 3 relapses into

alcohol in the past years and the relapses have lasted for 1 day," *id.* at 276.

Dr. Stockdale added:

> I continue to feel [Mr. Vigil] does not have the ability to maintain a job
> in the regular work force due to his psychiatric status. He continues to
> have chronic mental illness and does not have the skills, physical or
> cognitive energy or stamina, and adequate reason or judgment to work.

*Id.* at 277.

The ALJ gave very little weight to Dr. Stockdale's opinion. The ALJ reasoned

that Dr. Stockdale did not assess any specific functional limitations, he did not have a

treatment relationship with Mr. Vigil, he did not appreciate the extent of Mr. Vigil's

alcoholism, and he was unfamiliar with the standards and evidentiary requirements

applicable to disability claims.

On appeal, Mr. Vigil fails to advance any specific challenge to the ALJ's

rationale for affording Dr. Stockdale's opinions little weight. His opening brief

contains only sporadic references to Dr. Stockdale's opinion and offers no basis upon

which we might conclude that the ALJ erred. *See* Aplt. Br. at 17-18. "An appellant's

opening brief must identify 'appellant's contentions and the reasons for them, with

citations to the authorities and parts of the record on which appellant relies.'"

*Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P.

28(a)(8)(a)). "Consistent with this requirement, we routinely have declined to

7

consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Id.* These same rules govern Mr. Vigil's brief, even though we apply more lenient standards to pro se pleadings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Because Mr. Vigil fails to articulate any developed argument challenging the ALJ's evaluation of Dr. Stockdale's opinion, he has waived appellate consideration of that aspect of the ALJ's decision. *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("perfunctory complaints failing to frame and develop an issue are not sufficient to invoke appellate review" (internal quotation marks omitted)).

One additional note: to the extent Mr. Vigil contends the RFC "fail[s] to include [his] intolerance for human interaction and a need to isolate," Aplt. Br. at 20, this argument is refuted by the RFC itself, which limits him to unskilled work that does not include dealing with the general public or more than occasionally dealing with co-workers.

## C. Step Five: Hypothetical Question

Finally, Mr. Vigil contends the ALJ erred at step five by posing an inaccurate hypothetical question to the VE. He says the ALJ's hypothetical should have accounted for a multitude of different limitations, diagnoses, and symptoms, including his tendency to isolate from others, his unusual thought processes, his limited ability to function in high-stress environments, his moderate limitations in maintaining concentration, persistence, and pace, his paranoia, and his symptoms of psychosis or depression.

It is well established that a hypothetical question posed to a VE must reflect all of the impairments borne out by the record. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's hypothetical here restricted Mr. Vigil from performing "complex tasks, defined as SVP 2 or less," and allowed him to perform only unskilled work in which he completely refrained from dealing with the general public and only occasionally dealt with co-workers. R., Vol. 2 at 341. These restrictions reflected the nonexertional limitations found by the ALJ, and Mr. Vigil does not argue otherwise or explain why the ALJ was obliged to specifically include each individual symptom and diagnosis in the hypothetical. Consequently, he fails to show any reversible error.

                                        III

       The judgment of the district court is affirmed.


                                               Entered for the Court


                                               Jerome A. Holmes
                                               Circuit Judge

9