FILED
United States Court of Appeals
Tenth Circuit

January 8, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

REBECCA L. MAYS,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

        Defendant - Appellee.

No. 13-5068

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OKLAHOMA.
(D.C. No. 4:10-CV-00506-FHM)**

---

Submitted on the briefs:[*]

Richmond J. Brownson, Timothy M. White, Tulsa, Oklahoma, for
Plaintiff-Appellant.

Danny C. Williams, Sr., United States Attorney, Cathryn D. McClanahan, Assistant
United States Attorney, Michael McGaughran, Regional Chief Counsel, Region VI,
Dianne Mullins Pryor, Special Assistant United States Attorney, Social Security
Administration, Office of General Counsel, Region VI, Dallas, Texas, for
Defendant-Appellee.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **BACHARACH**, Circuit Judge.

**BACHARACH**, Circuit Judge.

Ms. Rebecca L. Mays appeals from a district court order affirming the Social Security Administration's denial of her application for disability benefits. We affirm.

## I.   Background

Ms. Mays applied for benefits, alleging a disability beginning in May 2004.

The assessment began at step one, with the administrative law judge finding that Ms. Mays had not engaged in substantial gainful activity from the alleged onset date to the date that her insurance coverage ended.

At step two of the sequential evaluation process, the administrative law judge found a severe impairment of low back pain.

At step three, the ALJ found that the impairments did not meet or medically equal the regulatory "listings," whether alone or in combination.

In assessing the residual functional capacity at step four, the ALJ found a residual functional capacity that allowed Ms. Mays to perform a full range of sedentary work. In making this finding, the ALJ found that the opinion of Ms. Mays' treating physician, Dr. Chorley, was not consistent with the objective medical evidence. The ALJ also found at step four that Ms. Mays could not perform her past relevant work.

But the judge determined at step five that jobs existed in the national economy that Ms. Mays could perform.  Thus, the ALJ found that Ms. Mays was not disabled.

The Appeals Council denied her request for review, and the district court affirmed the Social Security Administration's decision.

## II.    The Claims

Ms. Mays raises two issues on appeal.  First, she claims that the Social Security Administration failed to provide a complete administrative record.  Second, she contends that the ALJ failed to properly analyze the medical source evidence.

## III.    The Standard of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."  *Robinson v. Barnhart*, 366 F.3d 1078, 1080 (10th Cir. 2004) (internal quotation marks omitted).

## IV.    Claims Regarding the Incomplete Administrative Record

Ms. Mays' first claim relates to Dr. Chorley's assessment of residual functional capacity.  Dr. Chorley changed this assessment, but the new version was mistakenly omitted in the eventual administrative record.  Ms. Mays contends that the omission entailed a denial of due process and left the eventual findings without substantial evidence.  We reject these contentions.

## A.     The Error in the Administrative Record

During the hearing, Ms. Mays asked if she could submit a new version of the doctor's written report.  Ms. Mays represented that the two reports were identical with one exception.  In the amended report, Dr. Chorley downgraded Ms. Mays' ability to sit, stand, and walk.

On page 1 of his original report, Dr. Chorley had opined that Ms. Mays could:

- sit for 3 hours, stand for 2 hours, and walk for 1 hour at a time,

- sit or stand for a total of 3 hours, and

- walk for a total of 2 hours during an 8-hour work day.

In the amended report, Dr. Chorley stated that Ms. Mays could stand and walk for 10 to 30 minutes at a time; sit and stand for a total of 2 hours in an 8-hour work day; and walk for a total of 1 hour.

The ALJ stated that page 1 of Dr. Chorley's original report was withdrawn and the amended page 1 was substituted in its place.  The amended report was handed to the vocational expert, who was asked to assume the limitations stated there.  The vocational expert testified that according to the amended report, Ms. Mays could stand and walk for 10 to 30 minutes at a time; sit and stand for a total of 2 hours in an 8-hour work day; and walk for a total of 1 hour.  The expert added that there would be no competitive work available to a person with the physical abilities stated in Dr. Chorley's amended report.

The amended page 1 of the report was not ultimately incorporated into the administrative record. Thus, the record contains only the original version of Dr. Chorley's report.

## B.     The Due-Process Claim

Ms. Mays contends that the error in the administrative record resulted in a deprivation of due process because the ALJ and the Appeals Council could not review an exhibit missing from the record. Without the new page, the ALJ and Appeals Council could review only the version of Dr. Chorley's report that had been withdrawn. Because the error was not prejudicial, we reject Ms. Mays' due-process claim.

### 1.     The District Court's Reasoning

The district court rejected Ms. Mays' due-process claim, reasoning that the information from the amended page 1 of Dr. Chorley's report was in the record through the vocational expert's testimony. As we have noted, the vocational expert recited the limitations from that page when he answered the ALJ's questions. Based on this exchange, the district court concluded that the ALJ had considered the amended report.

We agree with the district court that: (1) Dr. Chorley's amended report was presented at the hearing and its contents appeared in the administrative record through the vocational expert's testimony, and (2) the ALJ considered the amended report during the hearing. But these conclusions do not fully address Ms. Mays'

current claims. She argues that in the eventual written decision, the ALJ relied on the wrong evidence (the original version of Dr. Chorley's report).

### 2. The Social Security Administration's Argument

The Social Security Administration does not dispute Ms. Mays' assertion that the ALJ based his decision on Dr. Chorley's original report. From that conclusion, the agency argues that the original report was properly *included* in the administrative record and that the doctor's amended report was properly *excluded*. The agency therefore contends that: (1) Ms. Mays is seeking a remand to submit *new* evidence, and (2) we need not remand because Dr. Chorley's amended report is immaterial. *See* 42 U.S.C. § 405(g) (providing that new evidence must be material to justify a remand); *Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981) (holding that a remand is proper when the reviewing court concludes that the "decision might reasonably have been different" had the new evidence been considered).

This reasoning, like the district court's, does not fully address Ms. Mays' current argument. Ms. Mays acknowledges that the record matches the ALJ's decision. But Ms. Mays contends that both are wrong because Dr. Chorley amended his report and the ALJ purported to accept the amendment.

### 3. The Prejudice Inquiry

Though we reject the reasoning of the district court and the Social Security Administration, we must decide whether the error in the record deprived Ms. Mays of due process. We conclude that no due-process violation took place because

Ms. Mays has not shown a likelihood of a different result if the ALJ had addressed Dr. Chorley's amended report. Consequently, the due-process claim must fail.[1]

"Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005). A due process claim will not succeed, however, if the claimant fails to show prejudice. *See Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009). Thus, when "a party complains about the *course* of administrative proceedings, that party must demonstrate that the adjudication was infected by some prejudicial, fundamentally unfair element." *Id.* (internal quotation marks omitted); *see Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994) (requiring a showing of prejudice for a due-process claim involving social-security proceedings).

Ms. Mays contends that Dr. Chorley's amended report would be crucial on remand because it corrected an internal inconsistency between pages 1 and 3 of the doctor's original report. On page 1 of the original report, Dr. Chorley opined that Ms. Mays could sit for 3 hours, stand for 2 hours, and walk for 1 hour. But Dr. Chorley added on page 3 that Ms. Mays was unable to maintain a position of comfort for more than 10 minutes. *See* Aplt. App., Vol. 3, at 280, 282. Ms. Mays asserts that Dr. Chorley's amended report eliminated this inconsistency by reducing

---

[1]    We note that it is not clear *how* the amended version of Dr. Chorley's report came to be omitted from the administrative record. It appears that Ms. Mays was the party responsible for ensuring that it was included. According to the hearing transcript, she agreed to submit the replacement page electronically after the hearing. The record does not disclose whether she did so.

her abilities to stand and walk on page 1 to only 10 to 30 minutes at a time. Therefore, she claims, the difference in the two versions is significant.

We disagree because the ALJ did not reject Dr. Chorley's original report based on an internal inconsistency. Rather, the ALJ concluded that the doctor's opinion was not supported by the objective medical evidence. The ALJ cited Dr. Chorley's narrative, which involved his opinion that Ms. Mays was 100% disabled until surgical intervention. Dr. Chorley did not alter that assessment in his amended report when he upgraded Ms. Mays' limitations on page 1. Therefore, Ms. Mays fails to show a likelihood of a different result if the ALJ had considered the doctor's greater restrictions in his amended report. Without such a showing, we do not regard the error in the record as prejudicial. And without prejudice, we must reject the due-process claim.

## C.     The Claim Involving a Lack of Substantial Evidence

Ms. Mays also argues that the mistake in the record left the decision without substantial evidence. We disagree.

"We have defined 'substantial evidence' as more than a scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (internal quotation marks omitted).

Ms. Mays asserts that the ALJ's decision is not supported by substantial evidence because the record is incomplete. We reject this argument for the reasons

discussed above with the due-process claim. The ALJ had substantial evidence to reasonably reject Dr. Chorley's conclusions, and the existence of that evidence is not undermined by the technical failure to replace one of the pages in the administrative record.

**V.      Claims Regarding the ALJ's Evaluation of the Medical Source Evidence**

Ms. Mays contends that the ALJ also failed to properly analyze the medical-source evidence. These contentions focus primarily on the ALJ's rejection of Dr. Chorley's opinion. We reject each of the contentions.

**A.      The Required Process for Evaluating a Treating Physician's Opinion**

The ALJ must follow a specific process when weighing a treating physician's opinion:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* And if the ALJ does not assign controlling weight to a treating physician's opinion, it is still entitled to deference and subject to weighing under the relevant factors. *See id.*; *see also* 20 C.F.R. § 404.1527 (listing the factors).

**B.** **The ALJ Properly Explained His Rejection of Dr. Chorley's Opinion and Had Substantial Evidence for the Findings**

Dr. Chorley opined that Ms. Mays was 100% disabled until surgical intervention. The ALJ rejected this opinion, concluding that this opinion was not consistent with the objective medical evidence. Ms. Mays argues that the ALJ erred by:

- failing to specify the weight assigned to Dr. Chorley's opinion,

- relying on a 2006 MRI and a 2008 CT,

- disregarding evidence of retrolisthesis,

- referring to Ms. Mays' comment about pain control through medication,

- failing to consider the regulatory factors,

- selectively referring to the evidence,

- using boilerplate language,

- relying on a consultative examiner's opinion, and

- misconstruing the consultative examiner's statements.

The ALJ pointed to two medical tests: (1) a 2006 MRI that "revealed only central disc protrusion at L5-S1" that "indented the thecal sac but did not clearly result in neural encroachment," and (2) a 2008 CT of the lumbar spine that "revealed minimal disk bulge without spinal or neural foraminal impingement." Aplt. App., Vol. 2, at 16. The ALJ also cited the report of a consultative examiner, Dr. Nodine, who concluded that Ms. Mays "should be able to function in a work environment which would limit physical hardship." *Id.* The ALJ noted that Ms. Mays had told

- 10 -

Dr. Nodine that "her pain [did] not become severe if she stay[ed] on her medication." *Id.* The ALJ ultimately held that the medical evidence and Dr. Nodine's opinion were consistent with Ms. Mays' ability to perform a full range of sedentary work.

### 1. **Specification of the Weight Assigned to the Opinion**

Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion "controlling weight." But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground. *See Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004).[2]

### 2. **Reliance on the 2006 MRI and 2008 CT**

In rejecting Dr. Chorley's opinions, the ALJ could reasonably rely on the 2006 MRI and the 2008 CT. Ms. Mays questions this reliance, arguing that "foraminal narrowing and central canal stenosis are factors for consideration only in cases of meeting or equaling Listing § 1.04." Aplt. Opening Br. at 24. But she does not explain the ALJ's inability to draw inferences about physical capability from the MRI and CT.

### 3. **Evidence of Retrolisthesis**

Ms. Mays also argues that the ALJ ignored the detection of retrolisthesis in the 2008 CT and in a 2004 MRI. For Ms. Mays, this evidence is significant because Dr. Chorley referred to retrolisthesis in his opinion. But the ALJ did discuss the

---

[2] Though *Causey* is unpublished, it is persuasive.

2004 MRI, noting that it revealed "mild" retrolisthesis. Aplt. App., Vol. 2 at 12; *see also id.*, Vol. 3 at 161. And Ms. Mays does not point to anything in the 2008 CT report that would indicate a worsening of this condition.

### 4. Reference to Pain Control Through Medication

Along with the 2006 MRI and 2008 CT, the ALJ cited Ms. Mays' statement to a doctor that medication kept her pain from becoming severe. Ms. Mays complains about this reference, arguing that she also said that she was taking strong medications four or more times per day. She does not explain why this omission is significant and we will not construct an argument for her. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that "perfunctory complaints" failing "to frame and develop an issue" are not "sufficient to invoke appellate review"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (declining to consider issues not adequately briefed for review).

### 5. Consideration of the Regulatory Factors

Ms. Mays argues that the ALJ failed to weigh Dr. Chorley's opinion based on the relevant factors in 20 C.F.R. § 404.1527. But the ALJ listed those factors, and the record shows that the ALJ adequately considered them. He recognized that Dr. Chorley is Ms. Mays' treating physician and discussed the doctor's treatment records going back several years. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (noting that the relevant factors included the nature and extent of the treatment relationship, the length of treatment, and the frequency of examination).

The ALJ also considered whether Dr. Chorley's opinion was consistent with the medical evidence. *See id.* (listing consistency with the record as another factor).

A doctor's relevant area of specialization is also pertinent. *See id.* In her opening appeal brief, Ms. Mays contends that specialization is only important because a neurosurgeon had recommended surgery. She does not point to any opinion evidence from a neurosurgeon or explain why another physician's area of specialization is relevant to the ALJ's analysis of Dr. Chorley's opinion.[3] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that the ALJ need not expressly apply each factor in weighing a medical opinion).

Finally, the ALJ considered other factors, including Ms. Mays' report that her pain does not become severe if she takes her medication. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (listing "other factors brought to the ALJ's attention").

Ms. Mays has not shown that the ALJ failed to consider the relevant regulatory factors.

6.     **Selective Review of the Evidence**

She also contends that the ALJ improperly picked from the record when assessing Dr. Chorley's opinion.

---

[3]     In her reply brief, Ms. Mays contends that the ALJ should have recognized that Dr. Chorley was board certified in family medicine. But we do not address this argument because it was raised for the first time in the reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

We have stated:

> The record must demonstrate that the ALJ considered all of the
> evidence, but an ALJ is not required to discuss every piece of evidence.
> Rather, in addition to discussing the evidence supporting his decision,
> the ALJ also must discuss the uncontroverted evidence he chooses not
> to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

Ms. Mays points to evidence that she claims the ALJ failed to discuss, but for the most part she does not say why it was significantly probative regarding Dr. Chorley's opinion. Again, we will not develop an argument for Ms. Mays. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).[4]

She does argue that the ALJ had to discuss evidence showing muscular weakness in heel walking, foot drop, weak or absent toe muscle strength, positive straight-leg raising tests, and asymmetrical deep tendon reflexes because these test results were "of listing level importance." Aplt. Opening Br. at 32. For this proposition, she cites § 1.00E1 of the listings, which states that "[i]nability to walk on the heels or toes, . . . when appropriate, may be considered evidence of significant motor loss." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00E1. That section further advises that spinal examinations should include detailed descriptions of certain tests

---

[4] In a perfunctory manner, Ms. Mays contends that the ALJ's determination regarding Dr. Chorley's opinion is not supported by substantial evidence. She asserts that the evidence supporting the opinion overwhelms the evidence that the ALJ actually discussed. But her contentions consist mostly of record citations without further development.

and observations, including straight-leg raising from the sitting and supine positions and deep tendon reflexes.[5]

Ms. Mays does not challenge the ALJ's determination that she lacks an impairment meeting or equaling the listings. Instead, Ms. Mays suggests that evidence regarding a listing test is always significantly probative. She does not cite authority for this suggestion, and none exists in our court.

It is true that the listing tests reflected evidence of back pain. But, the ALJ acknowledged at step two that Ms. Mays had low back pain. The ALJ simply rejected Dr. Chorley's conclusion that the pain was sufficiently severe to render Ms. Mays disabled.

In reaching this conclusion, the ALJ could draw from the same test results relied upon by Ms. Mays. For example, Dr. Chorley's examination showed that Ms. Mays' heel walking was normal, her sitting straight-leg raising was negative, and her deep tendon reflexes were symmetrical.[6] *See* Aplt. App., Vol. 3, at 283.

---

[5]    Ms. Mays also notes that § 1.04A of the listings identifies a positive straight-leg raising test as a factor weighing in favor of a disability finding. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A (addressing spinal disorders). Nonetheless, we have concluded in an unpublished decision that in itself, a positive straight-leg raising test does not render a claimant unable to perform sedentary work. *Rhodes v. Barnhart*, 117 F. App'x 622, 630 (10th Cir. 2004). This conclusion is persuasive.

[6]    Dr. Chorley did report a positive supine straight-leg raising on one side. But Ms. Mays acknowledges that the ALJ discussed other evidence of a positive straight-leg raising test. With this acknowledgment, Ms. Mays does not explain why the omitted evidence would have been significantly probative.

- 15 -

The ALJ did not selectively pick from the record.

7.     **Use of Boilerplate Language**

Ms. Mays argues that the ALJ relied on improper boilerplate when he rejected

Dr. Chorley's opinion.  The ALJ mentioned the possibility "that a doctor [could]

express an opinion in an effort to assist a patient with whom he or she sympathize[d]

for one reason or another" and that "patients [could] be quite insistent and demanding

in seeking supportive notes or reports from their physicians."  Aplt. App., Vol. 2, at

15.  Ms. Mays contends that an ALJ cannot reject a medical opinion based solely on

an assumption that the treating physician is biased.  *See Frey v. Bowen*, 816 F.2d 508,

515 (10th Cir. 1987) (holding that the ALJ's statement that a family doctor "naturally

advocates his patient's cause" was insufficient to support rejection of a doctor's

opinion (internal quotation marks omitted)).  But the ALJ's comments did not

constitute the sole basis for rejecting Dr. Chorley's opinion and did not detract from

the ALJ's further explanation.

8.     **Reliance on Dr. Nodine's Opinion**

The Plaintiff also challenges the ALJ's reliance on Dr. Nodine's opinion.  The

ALJ stated:

> Dr. Nodine's physical assessment on December 28, 2005, found no
> inciting injury or distinctive pathology on exam.  The claimant told
> Dr. Nodine her pain does not become severe if she stays on her
> medication.  Dr. Nodine opined that claimant should be able to function
> in a work environment which would limit physical hardship.

- 16 -

Aplt. App., Vol. 2, at 16. Ms. Mays contends that the ALJ improperly relied on Dr. Nodine's opinion that there was not an "inciting injury" and that Dr. Nodine's opinion was internally inconsistent. These contentions are rejected.

Ms. Mays contends in part that Dr. Nodine's finding of "no inciting injury" is not supported by the record. For this contention, Ms. Mays insists that she has regularly reported that she awoke in May 2004 with back pain one day after she had been "brush-hogging" on a tractor. But Dr. Nodine's comment must be read in context. Dr. Nodine said that Ms. Mays had "denie[d] any injury," and this statement immediately followed her account of the cause of her back pain. *Id.*, Vol. 3, at 176. Thus, Dr. Nodine appeared to distinguish "injury" from the pain that Ms. Mays experienced after engaging in physical activity. In any event, the ALJ twice noted Ms. Mays' assertion that her back pain was traceable to her brush-hogging activity, and there is no indication that the ALJ disbelieved this explanation. *See id.*, Vol. 2, at 13.

The Plaintiff also argues that Dr. Nodine's opinion is internally inconsistent because the doctor stated that he did not see "distinctive pathology," yet he reported that Ms. Mays demonstrated a positive seated straight-leg raising test on one side, painful range of motion of her spine, muscle spasms, and tenderness upon palpation, all of which she claims are distinctive pathologies. But again, Ms. Mays does not explain why Dr. Nodine's examination findings are inconsistent with an ability to

- 17 -

function in a work environment. *See Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986).

According to the Plaintiff, the ALJ ignored Dr. Nodine's statement that Ms. Mays "would benefit from a radiographic workup to rule out anatomical pathology and should avoid manual labor until this time." Aplt. App., Vol. 3, at 178. Ms. Mays interprets this statement as Dr. Nodine's opinion that she "could not work at all without further evaluation." Aplt. Opening Br. at 29. It is Ms. Mays, however, who misreads Dr. Nodine's conclusion: Dr. Nodine stated only that Ms. Mays should avoid manual labor until she underwent further tests.

## C.     The ALJ's Alleged Failure to Discuss and Weigh the State Agency Medical Consultants' Opinions Would Constitute Harmless Error

Ms. Mays also argues that the ALJ failed to discuss agency medical consultants' opinions about her physical limitations. This argument is rejected.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). But the need for express analysis is weakened "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Id.* at 1162. And an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. *See id.* at 1162-63.

In that case, the claimant is not prejudiced "because giving greater weight to [the opinion] would not have helped her." *Id.* at 1163.

For the sake of argument, we may assume that the ALJ failed to weigh the state agency medical consultants' opinions. Still, Ms. Mays does not identify any resulting prejudice. She cites one consultant's conclusions that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl. But she fails to explain why these limitations would conflict with sedentary jobs, for "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7.

Social Security Ruling 83-10 states that "[b]y its very nature, work performed primarily in a seated position entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5; *see* SSR 85-15, 1985 WL 56857, at *7 ("If a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact.").

Similarly, crouching is rarely needed for sedentary work. *See* SSR 83-14, 1983 WL 31254, at *2 (noting that to perform substantially all of the exertional requirements of most sedentary jobs, a person would not need to crouch); *see also Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (stating that the ability to crouch is not needed for substantially all sedentary and light jobs).

- 19 -

Like limitations on crouching, limitations on crawling, kneeling, or balancing would generally prove inconsequential on the ability to perform sedentary jobs. *See* SSR 85-15, 1985 WL 56857, at *7 (stating that an inability to kneel or crawl is "of little significance in the broad world of work"); SSR 96-9p, 1996 WL 374185, at *7 (postural limitations on balancing would not erode the occupational base for a full range of sedentary work).

As a result, the agency consultants' opinions proved inconsequential when the ALJ limited Ms. Mays to sedentary work. In these circumstances, the alleged failure to discuss the consultants' opinions would constitute harmless error.

## VI. Disposition

The judgment of the district court is affirmed.